CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-5915 Walua Rd., Unit 128
Kailua Kona, Hawaii 96740
Telephone: (808) 464-4047
Facsimile: (202) 204-5181
E-Mail: kculpepper@culpepperip.com

Attorney for Plaintiff:
Obsession Movie Production Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Obsession Movie Production Inc.<br><br>Plaintiff,<br>vs.<br><br>DOES 1-31<br><br>Defendants. | **Case No.: 1:26-cv-567**<br>(Copyright)<br><br>**COMPLAINT; EXHIBIT "1"**<br><br>**(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(2) DIRECT COPYRIGHT INFRINGEMENT** |

## COMPLAINT

Plaintiff Obsession Movie Production Inc. ("Plaintiff") files this Complaint against Defendants DOES 1-31 ("Defendants") and alleges as follows:

## I. NATURE OF THE ACTION

1. This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2. The Plaintiff alleges that Defendants are liable for: (1) direct copyright

infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) contributory copyright infringement.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4. Defendants either reside in, solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction. As such, Defendants have sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over them.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendants reside, and therefore can be found, in this State. Additionally, venue is proper in this District pursuant 28 U.S.C. § 1400(a) (venue for copyright cases), because the Defendants or Defendants' agents resides or may be found in this District.

## III. PARTIES

### A. The Plaintiff

6. The Plaintiff is a corporation registered under the laws of the State of

California and is an affiliate of Capstone Studios, Corp., a production company with a notable catalog of major award-winning motion pictures.

7. Plaintiff is the owner of the copyrights in the movie *Obsession* ("Work") a supernatural psychological horror film released in 2026. The Work tells the story of Bear, a music store employee who buys a supernatural toy that grants his wish for his friend Nikki to fall in love with him, resulting in horrific consequences.

## **B. The Defendants**

8. The Defendants are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".

9. Upon information and believe, Each of the Defendants received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work via BitTorrent protocol.

10. The Internet Service Provider ("ISP") provides the Internet service for Defendants. Plaintiff intends to subpoena the ISP in order to learn the subscriber identities of Defendants. Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant. Plaintiff believes that information obtained in discovery will lead to the identification of each

Defendants' true names and permit the Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants. Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

11. Defendants use a one or more piracy websites such as YTS.GG ("YTS").

12. Defendants used the YTS website to download a torrent file associated with the Work.

13. Defendants used the YTS website to download a pirated copy of the Work.

14. Defendants used the YTS website to stream the motion picture Work.

## IV. JOINDER

15. Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts that the infringements of its Work complained of herein by each of the Defendants was accomplished by the Defendants using the same YTS website; and there are

common questions of law and fact.

## V. FACTUAL BACKGROUND

### *A. The Plaintiff Own the Copyrights to the Work*

16. The Plaintiff is the owner of the copyright registrations for the screenplay and motion picture in the Work (PAu 4-242-516). This action is brought pursuant to 17 U.S.C. § 411.

17. The Work is currently offered for sale in commerce.

18. Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion picture which bore proper copyright notices.

19. Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

20. The Work is a motion pictures currently offered for sale in commerce.

21. The YTS website provides torrent files, many including its website in its file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiff's Work.

22. Defendants used the YTS website to download torrent files associated with the Work and/or stream the Work.

### *B. Defendants Used BitTorrent to Infringe the Plaintiff's Copyrights.*

23. BitTorrent is one of the most common peer-to-peer file sharing

protocols (in other words, set of computer rules) used for distributing large amounts of data.

24. The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

***1. Defendants installed a BitTorrent Client onto his or her Computer.***

25. A BitTorrent Client is a software program that implements the BitTorrent Protocol. There are numerous such software programs which can be directly downloaded from the Internet.

26. Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

27. Each of Defendants installed a BitTorrent Client onto his or her computer.

***2. The Initial Seed, Torrent, Hash and Tracker***

28. A BitTorrent user that wants to upload a new file, known as an “initial seeder,” starts by creating a “torrent” descriptor file using, for example, the Client he or she installed onto his or her computer.

29. The Client takes the target computer file, the “initial seed,” here the copyrighted Work, and divides it into identically sized groups of bits known as “pieces.”

30. The Client then gives each one of the computer file’s pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a “hash” and records these hash identifiers in the torrent file.

31. When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

32. Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a “tracker,” and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

33. The “tracker” is a computer or set of computers that a torrent file

specifies and to which the torrent file provides peers with the URL address(es).

34. The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

35. Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

***3. Torrent Sites***

36. "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol. There are numerous torrent websites including the website YTS.

37. Defendants went to torrent sites including the website YTS to upload and download Plaintiff's copyrighted Work.

***4. The Peer Identification***

38. The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Work) with other peers.

39. Upon information and belief, each Defendant was assigned a Peer ID by their BitTorrent client.

### *5. Uploading and Downloading a Work Through a BitTorrent Swarm*

40. Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

41. The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

42. Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

43. In this way, all of the peers and seeders are working together in what is called a "swarm."

44. Here, Defendants participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

45. In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The

recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

46. Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***6. A Computer Investigator Identified the Defendants' IP Addresses as Participants in a Swarm That Was Distributing Plaintiff's Copyrighted Work.***

47. Maverickeye UG ("MEU") identified the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

48. MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

49. MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the pirated file copies

50. The IP addresses and hit dates contained in Exhibit "1" accurately reflect what is contained in the evidence logs.

51. The logged information in Exhibit "1" shows that Defendants copied

pieces of the Plaintiff's copyrighted Work.

52. The Defendants' computers used the identified IP addresses in Exhibit "1" to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a pirated copy of Plaintiff's Work.

53. MEU's agent analyzed each BitTorrent "piece" distributed by the IP addresses listed on Exhibit "1" and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

54. MEU's agent viewed the Work side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

**VI. FIRST CLAIM FOR RELIEF**
**(Direct Copyright Infringement)**

55. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

56. Plaintiff is the copyright owner of the Work which contains an original work of authorship.

57. Defendants copied the constituent elements of the Work.

58. Defendants distributed constituent elements of the Work to others.

59. Defendants streamed the constituent elements of the Work.

60. Plaintiff did not authorize, permit, or provide consent to Defendants to

copy, reproduce, redistribute, perform, or display its Work.

61. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

62. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to distribute copies of the Work, in violation of 17 U.S.C. §§ 106(3) and 501.

63. As a result of the foregoing, Defendants violated the Plaintiff's exclusive rights to perform the Work, in violation of 17 U.S.C. §§ 106(3) and 501.

64. Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

65. The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

66. The Defendants' direct infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

67. The Defendants' direct infringements were committed "willfully and maliciously" within the meaning of 11 U.S.C. § 523(a)(6).

## VIII. SECOND CLAIM FOR RELIEF
**(Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)**

68. Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

69. By participating in the BitTorrent swarm with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

70. Defendants' participation in the BitTorrent swarm was tailored to infringement without any substantial or commercially significant non-infringing uses.

71. Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

72. Defendants knew or should have known that the other BitTorrent users in a swarm with them were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original. Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

73. The Defendants' contributory infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

74. The Defendants' contributory infringements were committed "willfully and maliciously" within the meaning of 11 U.S.C. § 523(a)(6).

75. By engaging in the contributory infringement alleged in this

Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining Defendants from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendants which he/she used to infringe Plaintiff's Work immediately cease said service;

(C) award the Plaintiff actual damages and Defendant's profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages pursuant to 17 U.S.C. §504-(a) and (c);

(D) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(E) grant the Plaintiff any and all other and further relief that this Court deems

just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua Kona, Hawaii, October 30, 2026.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff